UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SAMUEL GARCIA-MORENO,<br>Defendant. | Case No. 26-cr-40027-JPG |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Samuel Garcia-Moreno's Motion to Dismiss Indictment (Doc. 23). He asks the Court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) because venue is improper in the Southern District of Illinois.[1] The Government filed a response (Doc. 35).

## I. BACKGROUND

Garcia-Moreno is charged in a one-count indictment for Improper Entry by an Alien in violation of 8 U.S.C. § 1325(a)(2). The indictment alleges that, beginning on a date unknown to the grand jury and continuing until July 28, 2024, in Clark County, in the Southern District of Illinois, Garcia-Moreno, an alien, eluded examination and inspection by immigration officers.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Such motions may challenge "a defect in instituting the prosecution," including "improper venue." FED. R. CRIM. P. 12 (b)(3).

[1] Garcia-Moreno also argues that the indictment should be dismissed because it lacks sufficient specificity. The Court need not address this argument because it finds that venue is improper in this District.

The Constitution "twice safeguards the defendant's venue right." *United States v. Cabrales*, 524 U.S. 1, 6 (1998). Article III states that "Trial of all Crimes" shall "be held in the State where the said Crimes shall have been committed." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment entitles criminal defendants to a jury "of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. The Federal Rules of Criminal Procedure also require the government to "prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18.

In addressing the question of venue, the Court undertakes a two-step analysis. It first "must ascertain whether there is any statutory directive on the matter of venue." *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007). If no such directive exists, the Court must look to "the nature of the crime alleged and the location of the act or acts constituting it." *Id.* (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). The Government bears "the burden of establishing venue by a preponderance of the evidence." *Id.*

Garcia-Moreno is charged with violating 8 U.S.C. § 1325(a)(2). Section 1325(a) states:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1325(a).

The statute has an accompanying venue provision, which states that the prosecution of a person charged with a violation under § 1325, like Garcia-Moreno, "may be instituted at any place in the United States at which the violation may occur or at which the person . . . may be

apprehended." 8 U.S.C. § 1329.

## III. ANALYSIS

Garcia-Moreno argues that venue is improper in the Southern District of Illinois because the act of "elud[ing] examination or inspection by immigration officers" can be committed only at open ports of entry. The Government contends that venue is proper because § 1325(a)(2) is a continuing offense and Garcia-Moreno, as an alien who entered the United States at an undesignated place and has never submitted to inspection, continued to "elude" inspection from the time he entered the United States without inspection until he was apprehended in Clark County, Illinois.

The Court has found no Supreme Court or Seventh Circuit authority squarely addressing this issue, nor any on-point decisions from other district courts within this Circuit. Taking into consideration the statutory text, context, and relevant tools of statutory interpretation, and consistent with the weight of authority, the Court rejects the Government's reading of § 1325 and holds that the crime of "elud[ing] examination or inspection by immigration officers" can only be committed at open ports of entry.

### A. Statutory Text:

The Court starts with the statutory text. *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987); *Babb v. Wilkie*, 589 U.S. 399, 404 (2020). The statute does not define "eludes examination or inspection by immigration officers," so the Court must give the phrase its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S 37, 42 (1979). Because the phrase has remained unchanged since it was first used in 1929, the Court looks to its original meaning. *Whitfield v. United States*, 574 U.S. 265, 267 (2015).

In 1929, the verb "elude" was commonly used to mean "avoid slyly, by artifice, stratagem, or dexterity" or "escape from in a covert manner." *United States v. Corrales-Vazquez*, 931 F.3d 944, 948 (9th Cir. 2019) (quoting *Webster's New International Dictionary* 713 (1st ed. 1930)). But to "elude" something does not ordinarily mean simply to avoid it. *Id.* In *Corrales-Vazquez*, the Ninth Circuit illustrated this distinction:

> [I]n the case of five seamen who were not produced for inspection upon arrival of a ship, one might say that the men managed to *elude* the guards stationed in and about the vessel by escaping the ship without the guards' detection. But it would have been quite odd to say that the men "eluded" the guards if the men had avoided the port altogether and instead traveled by airplane.

*Id.* (internal citation and quotations omitted). To elude, then, "generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded." *Id.* Accordingly, an alien "eludes examination or inspection" only "at a time and place where the alien is at risk of undergoing those processes in the first place," namely, "at open and operating ports of entry." *Id.*

The Court is not persuaded by the Government's citation to *United States v. Bailey*, in which the Supreme Court held that "escape from federal custody . . . is a continuing offense." 444 U.S. 394, 413 (1980). Escaping from federal custody is not analogous to eluding inspection. An individual who escapes from federal custody has an obligation to remain in prison, while an alien who present in the United States and has not submitted to inspection has no comparable obligation. *See United States v. Cuadra Soto*, No. 4:25MJ3267, 2026 WL 123220, at *6 (D. Neb. Jan. 16, 2026); *United States v. De La Cruz-Rodriguez*, 834 F. Supp. 3d 480, 487 (D. Vt. 2026).

The Court is also not persuaded by the Government's citations to appellate decisions finding that offenses involving "avoiding" or "evading" are continuing offenses. Two of the cases it cites are from the Ninth Circuit, which has expressly held that "elud[ing] examination or

inspection by immigration officers" is not a continuing offense. *See Corrales-Vazquez*, 931 F.3d at 948. The other two cases are distinguishable. In *United States v. Marchant*, the Eighth Circuit determined that tax evasion is a continuing offense that can be prosecuted "in the district where the return was prepared, signed, mailed, or filed." 774 F.2d 888, 891 (8th Cir. 1985). It reached this conclusion because, although the crime of tax evasion "is completed when the taxpayer files the tax return with the Internal Revenue Service," the return cannot be filed "until it is prepared, signed, and mailed." *Id.* By contrast, an alien that eludes examination or inspection completes the offense upon entering the United States through an open port of entry without submitting to the required examination or inspection. Unlike tax evasion, this offense does not involve a series of acts that may occur at different locations. In *United States v. Martin*, the Sixth Circuit, in considering whether fleeing and eluding under Michigan law is a crime of violence for purposes of a Sentencing Guideline enhancement, stated that "[b]oth escape and fleeing from a police officer represent 'continuing offense[s].'" 378 F.3d 578, 582–83 (6th Cir. 2004) (quoting *United States v. Thomas*, 361 F.3d 653, 660 (D.C. Cir. 2004)). Because the court did not need to decide whether fleeing and eluding constitutes a continuing offense to resolve the issue before it, the statement has limited persuasive value.

B. <u>Statutory Context:</u>

Even if the Government's interpretation of "eludes examination or inspection" was plausible in isolation, it is inconsistent with the statutory context. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Reading § 1325(a) as a whole, it is evident that § 1325(a)(2) is limited to ports of

entry. The preceding subsection, § 1325(a)(1), makes it a crime to "enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers." And the following subsection, § 1325(a)(3), makes it a crime to "attempt[] to enter or obtain[] entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact." Both subsections are entry-based offenses. Interpreting § 1325(a)(2) as a continuing offense that can be prosecuted in a district unconnected to unlawful entry would create an inconsistency among the subsections of the statute. *See Robbins v. Pepsi-Cola Metro. Bottling Co.*, 636 F. Supp. 641, 656 (N.D. Ill. 1986) (quoting 2A Sutherland, Statutory Construction § 46.05 at 90 (4th ed. 1984)) (stating that each part or section of a statute "should be construed in connection with every other part or section so as to produce a harmonious whole"). Further, § 1325 is titled "Improper *Entry* by Alien." (emphasis added). This lends additional support to the interpretation that the statute already suggests: § 1325(a)(2) is not a continuing offense. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (stating that the title of a statute is a tool of construction that helps resolve doubt about the meaning of a statute, particularly when the title reinforces what the text independently suggests).

C. <u>Canon Against Superfluity:</u>

The interpretation that § 1325(a)(2) is not a continuing offense and can only be committed at open ports of entry is also supported by the rule against superfluity. This canon directs the Court to construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). Section 1325(a)(1) prohibits "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." It covers all aliens that enter or attempt to enter the United

States outside of an open port of entry. *See Corrales-Vazquez*, 931 F.3d at 950. If entry into the United States without inspection violates § 1325(a)(2), regardless of time or place, then § 1325(a)(1)'s prohibition is superfluous. In other words, an alien who "enter[s] . . . the United States at any time or place other than as designated by immigration officers" under § 1325(a)(1) would also be guilty of "elud[ing] examination or inspection" under § 1325(a)(2). *Id.* at 951. To avoid this superfluity, § 1325(a)(2) must be construed as a non-continuing offense.

D. Constitutional Avoidance Canon:

The Court does not believe that the canon of constitutional avoidance supports the Government's interpretation. This tool of statutory interpretation provides that, when the Court is "choosing between competing plausible interpretations of a statutory text," it should presume "that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381–82 (2005).

The Government argues that § 1329 permits a prosecution under § 1325 to be brought in the district where the defendant is apprehended, and if § 1325(a)(2) is not a continuing offense, the provision of § 1329 permitting prosecution in the district of apprehension would be unconstitutional as applied to inland arrests. The Government therefore suggests that the Court should avoid this constitutional problem by interpreting § 1325(a)(2) as a continuing offense.

The Court is not persuaded by this argument. Section 1329 permits venue in the district of apprehension for all three crimes charged in § 1325, not just § 1325(a)(2). Even if the Court were to, as the Government asks, construe § 1325(a)(2) as a continuing offense, prosecutions under § 1325(a)(1) and (a)(3) in the district of apprehension raise the same constitutional concerns with respect to inland arrests. In other words, "the implication from the Government's construction of

the statute is that Congress set venue in an unconstitutional place for two of the three crimes."[2] *Cuadro Soto*, 2026 WL 123220, at *4.

In addition, if the Court were to construe § 1325(a)(2) as a continuing offense, it would be expanding the scope of the statute to permit liability long after the person entered the United States without inspection. The Supreme Court has cautioned against employing the constitutional avoidance canon "to expand a criminal statute's scope." *United States v. Davis*, 588 U.S. 445, 464 (2019). Thus, the Court declines to use the canon to interpret § 1325(a)(2) is a continuing offense.

E. Nature of the Offense:

The nature of the offense does not indicate that Congress intended § 1325(a)(2) to be treated as a continuing offense. The Government, relying again on *Bailey*, compares prison escapees to aliens who evade inspection, and argues that § 1325 must be a continuing offense because aliens who enter the United States without inspection, like federal prison escapees, represent a continuing threat to American citizens. As the Court explained briefly above, it is not persuaded by this comparison. An inmate who escapes from federal prison has already been convicted of a federal crime and has committed a second crime by escaping from federal custody. An alien who eludes inspection, by contrast, has only committed one crime, and that crime carries a maximum statutory penalty of six months in prison. Simply put, there is nothing to suggest that an alien that eluded inspection poses a threat to society like that posed by a prison escapee.

The rationale of *Bailey* has been extended to other offenses, such as failing to appear for sentencing. *See United States v. Gray*, 876 F.2d 1411, 1419 (9th Cir. 1989). But individuals who

---

[2] The Court notes that there is another possible interpretation: Congress was exercising its authority to permit the prosecution of § 1325 crimes committed in United States territories. *See Espinoza-Cabrera*, 831 F. Supp. 3d at 176; U.S. CONST. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . not committed within any State . . . shall be at such Place or Places as the Congress may by Law have directed.").

fail to appear for sentencing have also been convicted of a federal crime and have committed a second crime by failing to appear. In other words, like prison escapees, they pose a greater risk to society than an individual who eluded inspection and faces a statutory maximum of six months. As such, the nature of the offense does not suggest a continuing threat sufficient to support the conclusion that § 1325(a)(2) is a continuing offense.

F. Legislative History:

The Court also does not believe that the legislative history supports the Government's construction. The statutory predecessor to § 1325(a)(2) prohibited "enter[ing] without inspection." Immigration Act of 1917, Pub. L. No. 64-301, § 19, 39 Stat. 874, 889. In 1929, when Congress redrafted the statute, it changed "enter[ing] without inspection" to "elude[] examination or inspection by immigration officials." Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1552. The language was adopted from a Canadian statute that imposed criminal penalties on any person "who at a port of entry eludes examination by an officer." Restriction of Immigration: Hearings on H.R. 5, H.R. 101, and H.R. 561 Before the H. Comm. on Immigration & Naturalization, 68th Cong. 680 (1924). The Government argues that this change expanded the scope of the offense beyond the mere point of entry and points out that Congress chose not to import the "port of entry" requirement from the Canadian statute. However, there is also an alternative inference: the "act of 'elud[ing] examination by an officer' was . . . understood at the time to occur 'at a port of entry,' where examinations took place." *Corrales-Vazquez*, 931 F.3d at 952.

There is other evidence that Congress did not intend § 1325 to be a continuing offense. In 1929, when Congress revised the statute, it sought to make the three provisions "broad enough to

cover *entry* in any manner." H.R. Rep. No. 70-2418, at 4 (1929) (emphasis added). Further, the legislative history suggests that Congress's purpose in creating the offense was "to help immigration officials with 'enforcement of the law,' particularly along the U.S.-Mexican border, and as an extra deterrent to prevent non-citizens from attempting to enter the United States 'surreptitiously.'" Doug Keller, *Re-Thinking Illegal Entry and Re-Entry*, 44 LOY. U. CHI. L.J. 65, 72–73 (2012) (quoting Hearings Before the H. Comm. on Immigration and Naturalization, 70th Cong. 28 (1928); H.R. Rep. No. 70-2418, at 8 (1929)). Finally, in 1952, Congress amended the illegal re-entry provision, later codified in 8 U.S.C. § 1326, to add "at any time found in" language, which "allowed for venue in any district in which the defendant was found." *Id.* at 85; *De La Cruz-Rodriguez*, 834 F. Supp. 3d at 491. Section 1325 was not similarly amended to add that language.

G. Precedent:

Although the issue of whether § 1325(a)(2) is a continuing offense has not been directly addressed by the Supreme Court, Seventh Circuit, or any district court within this Circuit, it has been decided by a few other courts. The overwhelming majority of these decisions have declined to interpret § 1325(a)(2) as a continuing offense. In fact, the Court has been unable to find any case adopting the Government's interpretation of § 1325(a)(2).

The Ninth Circuit has declined to interpret § 1325(a)(2) as a continuing offense and has determined that the offense "can be committed only where and when examinations or inspections take place—at open ports of entry." *Corrales-Vazquez*, 931 F.3d at 948; *see also United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193–94 (9th Cir. 1979) (finding that a § 1325(a)(2) offense is committed "at the time an alien gains entry through an unlawful point and does not submit to these examinations").

The Fourth Circuit similarly determined that "a § 1325(a) offense is completed at the time of the defendant's illegal entry" for statute of limitations purposes. *United States v. Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013). Several district courts have held that § 1325(a)(2) is non-continuing offense that can only be committed at an open port of entry. *See De La Cruz-Rodriguez*, 834 F. Supp. 3d at 492–93; *United States v. Vega*, No. 1:25-MJ-00399-JCN, 2025 WL 3558747, at *2–4 (D. Me. Dec. 12, 2025); *Cuadra Soto*, 2026 WL 123220, at *7; *United States v. Guzman Tejeda*, No. 1:25-CR-10454-JDH, 2026 WL 1005634, at *1 (D. Mass. Apr. 6, 2026); *United States. v. Espinoza-Cabrera*, 831 F. Supp. 3d 167, 176 (N.D.N.Y. 2026).

The Supreme Court has also suggested that offenses under § 1325 are not continuing because "'entry' is limited to a particular locality and hardly suggests continuity." *United States v. Cores*, 356 U.S. 405, 408 n.6 (1958); *see also I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1056–57 (1984) (White, J., dissenting) ("Those few cases that have construed [§ 1325] have held that a violation takes place at the time of entry and that the statute does not describe a continuing offense. . . . [A]nd it is relatively clear that such an interpretation is most consistent with the statutory language."). Although this statement is dicta, it is still very persuasive. *See United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) (stating that lower courts "must respect" what the Supreme Court says, even if it is dicta, "given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings").

In accordance with the statutory text, context, and relevant tools of statutory interpretation, and consistent with the weight of authority, the Court finds that the offense of eluding examination or inspection under 8 U.S.C. § 1325(a)(2) is not a continuing offense. There are no facts to show that Garcia-Moreno eluded inspection in the Southern District of Illinois. It is the Government's

burden to establish venue, and it has failed to do so. Accordingly, venue in this District is improper, and the Court will dismiss the indictment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Garcia-Moreno's Motion to Dismiss Indictment (Doc. 23). The Indictment (Doc. 1) is **DISMISSED without prejudice.**

**IT IS SO ORDERED.**
**DATED**: **October 22, 2026**

**J. PHIL GILBERT**
**United States District Judge**